The action was to recover on three notes, aggregating $365, the purchase price of certain threshing machinery, chiefly a steel separator and attachment, secured by chattel mortgage on the separator, etc.
The answer denied liability on the notes, set up in detail many instances in which the machinery had failed to come up to specifications, and alleged fraud in the procurement of the notes and mortgage, etc.
There was evidence offered by defendant, tending to establish fraud on the part of plaintiffs' agents who negotiated the trade and obtained the notes, etc.; that the machinery was delivered to defendant in the summer of 1906, and, after full and fair trial, the plaintiffs' agents and *Page 495 
representatives were notified in writing of defendant's position, and the machinery promptly returned; the evidence as to notice and return of machinery being, in part, as follows:
MOCKSVILLE, N.C. 3 July, 1906.
MESSRS.C. C. SANFORD SON, Mocksville, N.C.
GENTLEMEN: — Take notice that I cannot take the machine (threshing) bought of the J. I. Case Threshing Machinery Company, through you as agent of said company, for the reason that the machinery is not what was recommended to me at the time of the contract; that after three fair trials, with steam and gasoline, the machine fails to do the work as recommended; therefore, I cannot take the machine, which I return to you in good order, and hereby demand a surrender of all notes and other papers that I signed and delivered to you for said machinery. Respectfully, G. F. FEEZER.
"Machine returned to Stanford in as good condition as I got it. I signed Exhibit `A.'"
On issues submitted, the jury rendered the following verdict:
1. Did the defendant execute the contract alleged in the complaint and replication? Answer: Yes.
2. Did the defendant execute the notes and mortgage alleged (518) in the complaint? Answer: Yes.
3. Were the notes and mortgage sued upon procured from the defendant by the false and fraudulent representations of the plaintiff, as alleged in the answer? Answer: Yes.
4. Is the defendant indebted to the plaintiff, and if so, in what amount? Answer: Nothing.
Judgment on verdict for defendant, and plaintiffs excepted and appealed.
It was chiefly urged for error, on the part of the plaintiffs, that the plea of fraud was not properly alleged in the answer, but only appeared by way of general averment, entirely insufficient to sanction or justify the submission of the issue. The legal position, as stated by counsel in his learned argument before us, is well taken, and has been recently declared by this Court in the case of Mottu v. davis, 151 N.C. 237, in which it was held:
"5. This defense of fraud involves an issue of fact, and in order to be available it is not sufficient to aver in general terms that a judgment *Page 496 
was procured by fraud, but the alleged facts must be set forth with sufficient fullness and accuracy to indicate the fraud charged and to apprise the offending party of what he will be called on to answer."
But we do not think that the facts disclosed in the record permit the application of the principle. Our statute on this subject provides, "That in the construction of a pleading for the purpose of determining its effect, its allegations shall be liberally construed with a view to substantial justice between the parties" (Revisal, sec. 495); and applying this statutory rule, we are of opinion that, on a perusal of the entire answer, the plea of fraud has been sufficiently stated, and that the issue in question was properly submitted. Section 5 of the answer contains a detailed and elaborate statement of the representations made by plaintiffs' agents at the time of the trade as to the qualities, the structure and capacity of the machinery for the purposes designed. They are there described as "guaranties or warranties," and as such were probably excluded by the written contract subsequently entered into between the parties, but they are so stated as to permit and require, on the question we are now discussing, that they be regarded as representations made by plaintiffs' agents in the treaty or bargain, and are sufficiently full and specific to apprise the vendor of the facts relied upon in impeachment of the sale.
(519) After making these statements and alleging the absolute failure of the machinery to comply with the stipulations, the answer proceeds as follows:
"8. Defendant, further answering, says that in the manner and way set forth above the said notes and mortgage were obtained from him through fraud and misrepresentations of plaintiff and its agents, and, as he is advised and believes, are fraudulent and void."
True, if this section was taken alone, it would likely be too general, as containing only a legal conclusion; but when connected with the former statements of the complaint, as it is by the averment "That in the manner and way set forth above," the answer, we think, meets the requirements of the rule contended for, and the issue is properly joined.
It was further contended that, as representations made during the treaty or negotiation between these parties, the statements complained of should not be considered as material averments inducing the sale; but only as the ordinary assertions by which a vendor is at times accustomed and allowed to commend his wares, and which are not to be regarded as seriously made, and plaintiff relies upon the decision of Cash Register Co. v. Townsend,137 N.C. 652, in support of his position. In that valuable and well-considered case it was held, among other things, that:
"3. Expressions of commendation or of opinion, or extravagant statements as to value, or prospects, or the like, are not regarded as fraudulent in law." *Page 497 
And Associate Justice Brown, delivering the opinion, said further:
"This evidence does not disclose any misrepresentations of a subsisting fact. The language of the agent, at best, was nothing more than `dealer's talk' commending his wares, and possibly exaggerating what the machine could no. There is no evidence of any fraudulent misrepresentations," etc.
But the representations set out and relied upon in the defendant's answer come within no such description or principle. On the contrary, they are positive statements, made by the agents of the manufacturer at the time of the trade, and as an inducement thereto, and contained averments as to the weight and capacity of the machinery, the quality of the work it would do and the amount of power that would be required to run it properly, and are well within the principle declared and sustained in the opinion ofWhitehurst v. Ins. Co., 149 N.C. 273, in which statements of like kind were treated as material. In that case it was held:
"1. Declarations, though clothed in the form of an opinion or (520) estimate, made by a duly authorized agent to induce a contract or policy of insurance, accepted and reasonably relied upon by the other party as statements of facts, may be considered upon the question of whether fraud had been thereby perpetrated; and when there is a doubt as to whether they are intended and received as mere expressions of opinion, or statement of facts to be regarded as material, the question is one for the jury."
And delivering the opinion, the Court said:
"While it is a correct principle, as we have held in Cash Register Co.v. Townsend, 137 N.C. 652, that expressions of commendation and opinion, or extravagant statements as to value, or prospects and the like, are not, as a rule, regarded as fraudulent in law, it is also true that, when assurances of value are seriously made, and are intended and accepted and reasonably relied upon as statements of fact, inducing a contract, they may be so considered in determining whether there has been a fraud perpetrated; and, though this declaration may be clothed in the form of opinion or estimate, when there is doubt as to whether they were intended and received as mere expressions of opinion or as statements of fact to be regarded as material, the question must be submitted to the jury. 14 A. E., page 35; 20 Cyc., page 124; Morse v. Shaw, 124 Mass. 59.
"In 20 Cyc., supra, it is said: `Whether the representation was merely the expression of opinion and belief, or was the affirmation of a fact to be relied upon, is usually a question for the jury; so, ordinarily, it is for the jury to say whether representations as to value, solvency, or a third person's financial ability are statements of fact or opinion.' *Page 498 
"And it is not always required, for the establishment of actionable fraud, that a false representation should be knowingly made. It is well recognized with us that, under certain conditions and circumstances, if a party to a bargain avers the existence of a material fact recklessly, or affirms its existence positively, when he is consciously ignorant whether it be true or false, he may be held responsible for a falsehood; and this doctrine is especially applicable when the parties to a bargain are not upon equal terms with reference to the representation, the one, for instance, being under a duty to investigate and in a position to know the truth, and the other relying and having reasonable ground to rely upon the statements as importing verity. Modlin v. R. R., 145 N.C. 218; Ramsey v.Wallace, 100 N.C. 75; Cooper v. Schlesinger, 111 U.S. 148; Pollock on Torts (7 Ed.), 276; Smith on the Law of Fraud, sec. 3; Kerr on Fraud and Mistake, 68."
(521) Applying the doctrine upheld by these authorities, there was no error to plaintiff's prejudice in referring the character of these assurances and statements to the jury.
Again, it is contended that the contract contains stipulations providing that claims for damages for breach of the various warranties expressed in the instrument, whether by way of action or counterclaim, shall not arise to the purchaser except after certain prescribed trials had and written notice of failure duly given both to the agents and the company at Racine, Wisconsin; and it is insisted that such stipulations are to be taken and construed as conditions precedent available for plaintiff's protection in the present case. This position might be sustained under certain conditions, but it involves and rests upon the proposition that the contract holds, and that the provisions referred to continue to express the obligations of the respective parties in reference to it. In that view, the effect contended for has been allowed in a decision on a contract exactly similar to this at the present term in the case of Machine Co. v.McClamrock, ante, 405, and the ruling is in accord with many authoritative decisions elsewhere, to which we were referred in the carefully prepared and learned brief of plaintiff's counsel; but when fraud in the procurement of the sale has been alleged and shown, and the purchaser has done nothing by conduct or laches which prevents his pleading it in annulment of the contract, the stipulations referred to as preventive conditions fail with the contract in which they are contained, and the defense indicated is open to the purchaser.
And the same answer may be made in reference to the stipulations of the contract restricting the power of the company's agents, and providing further in this connection, "That no representations made by any person as an inducement to give and execute this order shall bind *Page 499 
the company." It is well understood that when a sale has been effected by actionable fraud a purchaser has an election of remedies. If he acts promptly, and especially if he is in a position to restore the consideration, he is allowed to rescind the trade in toto; or he may retain the property and sue for damages arising by reason of fraud. Speaking to this question, in May v. Loomis, 140 N.C. 358, the Court said:
"Where a sale has been effected by an actionable fraud, the purchaser has an election of remedies. He may ordinarily, at least at the outset, rescind the trade, in which case he can recover the purchase price or any portion of it he may have paid, or avail himself of the facts as a defense in bar of recovery of the purchase price or any part of it which remains unpaid, or he may hold the other party to the contract and sue him to recover the damages he has sustained (522) in consequence of the fraud.
"In order to rescind, however, the party injured must act promptly and within a reasonable time after the discovery of the fraud, or after he should have discovered it by due diligence; and he is not allowed to rescind in part and affirm in part; he must do one or the other. And, as a general rule, a party is not allowed to rescind where he is not in a position to put the other in statu quo by restoring the consideration passed."
In the case at bar, as soon as the purchaser discovered the defects complained of, and was aware of the facts relevant to the issue, he immediately restored the property to the company's agent, "in as good a condition as when he got it," and having done this, and pleaded and established the fraud in annulment of the trade, the restrictive stipulations are, as stated, no longer available. To hold the contrary would be to sanction the principle that the deeper the guile the greater the immunity, and enable fraud by its own contrivance to so entrench itself that its position would in many instances be practically unassailable.
Nor can the position be at all sustained that there was no evidence of fraud in the procurement of the notes and mortgage; but the testimony only bore on the validity of the bargain which had been entered into some time before. The notes were executed by defendant in pursuance of the previous bargain, and before defendant had discovered or had opportunity to discover the defects complained of, and before he was aware or had opportunity to inform himself of the facts pertinent to the inquiry and as to this charge, and, on the facts and circumstances presented here, they are to be regarded as one and the same transaction.
We find no reversible error in the record, and the judgment in favor of defendant is affirmed.
No error. *Page 500 
 Cited: Unitype Co. v. Ashcraft, 155 N.C. 68; Robertson v. Hatton,156 N.C. 220; Machine Co. v. Bullock, 161 N.C. 12; Machine Co. v. McKay,ib., 588; Pate v. Blades, 163 N.C. 273; Harvester Co. v. Carter,173 N.C. 231.